Case number 19-5099 Yankton Sioux Tribe v. David Longley Bernhardt Secretary of the Interior, et al., Herman Mermelstein and Forewoods, PA Appellants, Mr. Herman for the appellants, Mr. Fenner for Appalee-Yankton Sioux Tribe and Ms. Yowell for Appalee-David L. Bernhardt, et al. Mr. Herman Good morning. May it please the Court, Jeff Herman on behalf of Appellant Herman Long, formerly known as Herman Mermelstein. Your Honors, the District Court's order would expand tribal sovereign immunity in an unprecedented way. The principles of sovereign immunity are well known and undisputed. It's to protect the sovereign's treasury, to protect the fiscal integrity of the sovereign, and it's to protect the independence of the sovereign to govern its day-to-day operations without interference by a third party coming into courts and demanding that the sovereign appear. None of these concerns are implicated here. We are seeking an equitable interference by the Court to protect our attorney states. We claim an interest in the money to be paid pursuant to a disbursement an order the judge will oftenly issue. Where would the money go if you don't get any of it? It would go to the sovereign. That's different from invading the sovereign's treasury? In what way? Yes, well, it's very different because the money's not in the sovereign's treasury yet. It's just in the pipeline. And that's an important distinction. What says that's important? Well, the long-held principles and judgments and opinions on what sovereign immunity is. If this was a breach of contract case that we were trying to file against the sovereign and they had the money commingled in their treasury, then there would be a claim of sovereign immunity that could preclude us from seeking that. But this is money that was earmarked and equitable interest was given the moment this contract was entered into it. Let's go back on that. Let's assume in your favor that D.C. law creates a lien in favor of an attorney for services under certain conditions. Now, wouldn't the first step in enforcing that lien be resolving factual disputes relating to whether the conditions for creation of the lien have been satisfied? In this, it would be the second step because it would be the second step. The first step is our motion to intervene to give the court jurisdiction to make that determination. Right now... Okay. All right. I understand that. But once you get in, that's what would happen. Yes. Right? So it's not as if you're just... It's conceded that this property is yours and you're demanding that it be turned over to you. You're trying to establish that you have this property interest and that involves exactly the sort of conflict that goes on in any lawsuit. In any lawsuit, but it doesn't implicate sovereign immunity. Sovereign immunity is a different animal. Sovereign immunity says you have a sovereign that has its treasury and they can't be sued outside of their domain, so to speak, in a way to get a judgment to attack and grab that money. It's like if you had the sovereign in this, it's an imaginary boundary in a circle. You have the treasury in this circle. We're outside that circle.  which was granted to us pursuant to an agreement in 2003. If the money were already in the sovereign, then we would have a problem with sovereign immunity. We admit that. We would have to be seeking to file a separate claim. But the same principles that apply to recruitment and offset and the reasons that those arguments don't implicate sovereign immunity applies here because in a recruitment case, there's litigation that's pending and there's offsets and there's claims that are made outside of this circle. In our recruitment case, the sovereign has already gone to court and impliedly waived its sovereign immunity by going to court against the person who wants recruitment. Sovereign hasn't gone into court against you. No. They've gone to court, though. But not against you. Correct. And you're going to court against them. That is, you say that there is a lien. They say there isn't. They say there's a problem with respect to tribal law as to authorization, and they didn't authorize it. So there has to be a trial of those facts, right? Yes, ultimately, yes. Well, that's the same as if they were a defendant in any other case. You want their money. And you have to sue them and get a factual determination in your favor that they owe you money. We can't assume that they owe you money here. Well, I think the court can assume that we have an equitable interest in that money, and ultimately the trial court judge. What's that money? I mean, there would have to be litigation to determine whether you had a lien for any amount of money, right? Yes. I mean, there's no question a lawsuit was filed that went on for nine years, and there's no question there was an agreement that was signed, and there's an understanding that the firm would receive 25 percent of the settlement proceeds or judgment ultimately. There's no question about that, and that's been litigated, had been litigated for over nine years. So we're not now coming – there's nothing wrong in preventing the firm, the law firm, from enforcing that agreement or enforcing that equitable right before the court that's hearing the subject litigation. That's not what sovereign immunity protects. Sovereign immunity doesn't say a tribe would never, ever have to pay money that it's obligated to pay. It's not a blanket that says they could just enter into the courts, hire lawyers on contingency fees, and then the night before the settlement, which is what happened here, say, why don't we just fire you and hire a lawyer, an Indian lawyer, and pay them hourly so we don't have to pay you. That would violate the equitable principles, and it doesn't violate – this court's interference does not implicate sovereign immunity. I mean, I think the Waters case is a good example of when sovereign immunity is implicated. In the Waters case, you had similar facts where the lawyers were discharged, and then the lawyers did not seek to intervene. They waited until the money was paid to their former client, and then they sued the government. That's an independent claim they brought against the government, and the concerns about going after – going into the government's treasury and going after funds that could have been earmarked for other things was at issue. If we waited here for the money to be paid to the tribe, and then we sued the government, we'd have the Waters situation, and we would lose that clearly. It's not what we're doing. What we're saying, this money is not earmarked for other things. This money is earmarked for a settlement. The government's going to pay that either way. All we're seeking is judicial interference by the court to allocate what we believe is an interest that has existed since the day the contract was executed. And their view is the contract was illegal and invalid, right? Yes, but for purposes of today, I think the court takes what we're saying to be true. That's for another day. That's not an issue before this Court. No, but it's not an issue as to whether we don't decide whether it's true or false, but we have to decide whether the requirement that the tribe litigate that issue invades their sovereign immunity. Yes. And the argument here and the principle is that this is something that the courts have jurisdiction to resolve when there's a contingency fee agreement. The court that is hearing the subject lawsuit has the authority and jurisdiction to hear the dispute over the contingency fee agreement based on equitable principles. Sovereign immunity doesn't preclude that, and it doesn't preclude that because this money isn't in the treasury and we're not attacking their public fist for money that's earmarked for something else. The court has the jurisdiction under a motion to intervene for something exactly in this situation. If you think about the basis of sovereign immunity, it's to protect us from going or filing a separate lawsuit against the sovereign to enforce a contract. That's not what we're doing here. This is an equitable interference that I believe we have the right to do under law. The government makes an argument that somehow we would be violating the government's sovereign immunity if the court issued an order and interfered with directing the government on how to pay this money. And I think that's a baseless argument. In every one of these cases where there's a settlement or there's a judgment, the court issues an order directing the government on how to pay that money. If the tribe was not trying to not pay their legal fees here, we would still get to a judgment, and the judgment would direct the government on how to pay that money. This money that the government is going to pay is now earmarked for something else. This is not an interference with the U.S. government's day-to-day operations. That money is being paid either way. This is just another order that would direct the government on how to pay that. Can I ask you a question? I'm actually getting a little more confused about the nature of an attorney's lien. So in our opinion in Democratic Central Committee versus Washington Metropolitan Area Transit Association, we say that under D.C. law, validity of an attorney's charging lien and proceeds obtained through judgment or recovery where the client and the attorney understood that the attorney would be paid out of the case's proceeds requires an agreement. Do you agree with that? That we have to start with contingency fee agreement? Yes. There has to be an agreement. Yes. So if there's no agreement, which is the tribe's position, then you don't have an equitable lien. You don't have a charging lien. Is that right? Well, I think you get into there's other ways that they approach attorney's fees, but there has to be an agreement. Correct. There has to be some authorization, whether you think they argue it's 25 percent or whatever they're going to say. But it's not just an equitable right you did work with, like some kind of quasi-contract. You did work for them, so you have a right to obtain money. There has to be an agreement. I suppose in any context, a lawyer representing a client has an implied right or an agreement to represent them. There has to be an agreement. So imagine we go back to trial and the tribe establishes that people who made the agreement didn't have authority to do that and that you knew that, whatever it is. Then you don't get the lien, right? Your Honor, I can't imagine a situation where a law firm is representing a client for nine years, litigating a case, meeting with tribal chiefs, government meetings, and then to say that there was no understanding. Now you're getting ahead of the facts here. We're not supposed to be deciding that question. Since that question has to be litigated and the tribe is disputing that they had an agreement with you, that makes them the defendant in the dispute. Well, but it's a defendant in the sense that they're defending their position or they're taking a position in the, I don't see him in my time, but I'll probably answer this question. It makes them a defendant in the sense that they're taking a legal position about the fee. But it doesn't, just because they're taking a legal position and are, as you say, a defendant, doesn't mean they have sovereign immunity. Sovereign immunity only applies where we're going in and there would be a claim against the public, against the treasury separate of the tribe, of the sovereign. We're not doing that. This money is part and parcel, part of this lawsuit that's being litigated that's outside that circle. Sovereign, this would be an expansion of sovereign immunity to apply to any time there's issues resolving fees or monies that are outside of the tribe. Okay, I'll let you reserve the rest of your time. Thank you. Thank you. Good morning. May it please the court. Ben Fenner for Appellee Yankton Sioux Tribe. I'll be addressing the facts leading up to the purported agreement and the tribal sovereign immunity issues and Ms. Yowell will be addressing the federal sovereign immunity issues. I'd like to address a couple points that my friend made. One, that he seems to be making the distinction of where the money lies as to how this case is analyzed. And I think that neglects to recognize the nature of the funds at issue here, which are funds held in trust by the United States government for the tribe. These are not somehow outside of the tribe's purview. The fact that these are not earmarked, I think, is irrelevant to the sovereign immunity analysis and I think assumes a lot that's not in the record. And I won't go into what the tribe intends to do with these funds in terms of supporting its governmental services. There's a policy argument that I hear to limit sovereign immunity in this case. And it simply may not be withdrawn or diminished due to equitable considerations. It goes to the court's subject matter jurisdiction. We can talk about sovereign immunity and how it overlies this case, but at the end of the day, this goes to the court's authority to hear this case in the first instance. It's the jurisdictional nature of the power of the court to bring these parties before it and hear these issues. And as the court notes, it is the tribe's position that there is no money owed on this invalid contract. My friend came onto the Yankton Sioux tribal reservation and presented a contingency fee agreement, which was executed by the chairwoman of the Business and Claims Committee, the tribe's executive committee, after purporting to familiarity with tribal law, the tribal constitution. The purported contract was entered into in violation of that constitution, Article 5. Sorry, the bylaws, Section 2, Section 5 requires approval by resolution of the general council, which did not occur here. Which resolution would authorize the executive who was authorized to execute the agreement on behalf of the tribe? The agreement was for a damages claim against the United States, a damages claim that was subsequently dismissed. My client then terminated Mr. Herman's services based on the fact that the contract was invalid under tribal law and offered to negotiate a settlement as to appropriate compensation for my friend's services and fees. Mr. Herman refused and withheld my client's file, demanding a waiver of sovereign immunity in order to return that file. My friend improperly refused to return my client's file and instead seeks to rewrite an invalid contract to extort a waiver of immunity. Failing to extort that waiver, my friend makes two primary arguments, that this is not a suit that implicates tribal sovereign immunity and that it is policy considerations direct that the implied waiver under the recoupment line of decisions should be extended here to attorney's liens. It's the tribe's position that the first argument, that that argument was waived as it wasn't argued below. Regardless, it carries forward this, as the Ellum Court v. Monarch Insurance decision found, it carries forward this strained distinction between a cause of action under a fee agreement and a lien. Whether a person, in this case Mr. Herman, comes in under Rule 24 or Rule 3, the analysis under Rule 82 doesn't change. The court needs to establish its jurisdiction either way. Sovereign immunity is not limited to a suit, even if the form in which, the rule under which he was coming into court did make a difference here. The case law is clear that tribes are immune from judicial process. They're immune from in-rem actions, state tax and regulatory laws. Waters, in the Waters case, this court held that sovereign immunity protects against the imposition and the enforcement of an attorney's lien. So the law is clear that the tribe's immunity, sovereign immunity, protects against the action sought here. It's being sought to be brought into court on Mr. Herman's action. And recoupment, these policy arguments that I'm hearing are precluded. The Supreme Court has said time and again that it's not for the court to determine the limits of sovereign immunity. Congress has plenary authority over tribes and tribal immunity. So the policy arguments to extend implied waiver to attorney's liens is not an Article 3 function. And I think it's clear from the record, as Judge Hogan found below, that this is not recoupment, as there's nothing to recoup. My friend did not sue and is not owing any damages. Neither is this the same transaction or occurrence as the district court found. This is a violation of the duty of trust owed by the United States to the tribe, bringing injunctive and declaratory relief. And my friend's suit is a damages claim on contract. For this reason, the Yankton Sioux Tribe respectfully requests that this court uphold the denial of Herman Law's motion to intervene. Thank you. We'll hear from the United States. Good morning, and may it please the Court. Amelia Yowell on behalf of Federal Appellees. There are two main problems with Herman Law's asserted lien. First, tribal sovereign immunity bars the lien because Herman Law failed to obtain a waiver in his contingency fee agreement. Second, the lien is barred by the United States' own sovereign immunity because the lien seeks to attach to funds in the U.S. Treasury. This morning, I'd like to focus primarily on federal sovereign immunity, although I'm happy to entertain any questions from the Court regarding the government's position on tribal sovereign immunity. Does the Court agree with the description of tribal sovereign immunity presented by the tribe? Yes, Your Honor. Tribes possess the same common law immunity from suit traditionally enjoined by the sovereign. This includes protection from state law contract claims. What about their argument that the money isn't being taken from the treasury of the tribe? That it's being taken from what would be a fund transmitted to the court? Practically, Your Honor, the money is taken from the tribe's treasury because without Herman Law's lien, the tribe would receive 100% of the settlement proceeds. So regardless of the fact that it'd be taken before it's transferred into the tribe's account, the practical matter is the same. If it's being taken from the tribe's treasury as a practical matter, can it also be taken from the United States' treasury? Yes, Your Honor. This Court recognized in Kalodner that the essence of federal sovereign immunity is who has possession of the funds. And in this case, it's undisputed that the funds right now are still in the U.S. Treasury. What happens after the judgment is paid into the court's registry? Once the money leaves the federal government's hands, federal sovereign immunity no longer applies. But I think it's important to note that at record number 54, this is Herman Law's complaint and intervention, he's seeking an order from the court directing the government, directing the United States, to pay him directly from the U.S. Treasury. And that type of order is exactly what federal sovereign immunity protects against. There's a long line of Supreme Court and Court of Appeals precedent recognizing that federal and public funds are immune from equitable liens and other related devices like garnishment. This well-established principle... If he reframed his request simply to have his claim heard when asked if money was paid into the court registry, the government would not be here. At that point, the government would not be making a federal sovereign immunity argument, but the government would be making a tribal sovereign immunity argument. Because there's two reasons why tribal sovereign immunity would apply. Because you're holding a trust for the tribe. Exactly, Your Honor. And not only that, not only are you diminishing the tribe's treasury practically, but you're also subjecting the tribe to litigation on numerous disputed contract issues. And the Supreme Court recognized in Kiowa that the tribal sovereign immunity protects against litigation on those issues. It's not just a protection against liability, it's also protection against litigation. And so, in Your Honor's hypothetical, if the money was paid directly into the court, the tribal sovereign immunity would apply in that case. But again, Herman Law's complaint and intervention is requesting that the United States pay Herman Law directly for his fees. And this court has recognized that you can't impose a lien on equitable... Or you can impose an equitable lien on funds in the public treasury. That's Waters v. WMATA. The Ninth Circuit and the Federal Circuit has also recognized that you can't assert an attorney's fee lien on funds in the U.S. Treasury. And that's exactly what we have here. It makes no difference that Herman Law is trying to assert his lien in a pending action instead of bringing a separate standalone action. No matter when and how they are asserted, liens are attempting to encumber funds in the U.S. Treasury. And Herman Law's lien is no different. The entire point is to attach the money in the treasury. The only way that Herman Law would be able to obtain a judgment directing the United States to pay him directly for his fees is if Congress has unequivocally consented and waived sovereign immunity. Herman Law points to no such waiver. In Herman Law's reply brief, he suggests that 26 U.S.C. Section 6323 is such a waiver. But that provision is an IRS provision that addresses the validity of U.S. tax liens and compares their order of priority as opposed to other validly asserted liens. It says nothing about whether a law firm like Herman Law can assert and attach a lien to funds in the U.S. Treasury. Herman Law points to nothing in the text or history of that provision that would suggest that Congress unequivocally intended to overrule the Supreme Court's longstanding precedent that liens cannot attach to public funds. Finally, Herman Law also suggests that the government forfeited this argument by not adequately raising it below. Even if the court were to conclude that was the case, this court's decisions and settles establish that sovereign immunity is a jurisdictional issue and may be raised at any point in the litigation. And on the basis of Herman Law's complaint and intervention, which is the only thing that is before this court, federal sovereign immunity would attach to Herman Law's request. And unless the court has any other questions on federal or tribal sovereign immunity, we ask the court to affirm. Thank you. Does Mr. Herman have time? I have no time remaining. I'll give you another two minutes, don't worry. Thank you, Your Honor. First I want to clarify, I'm assuming that counsel for Yankton did not intentionally Excuse me, you have to address the court. misrepresent facts of this court. Accusing me of extortion and falsely representing facts about what happened in this case is totally inappropriate. The facts of this case, and I have the resolutions to read, were that after the settlement was approved, is that I was called into a meeting and the tribe said, why don't we just fire you instead of paying you the million and a half dollars and hire an Indian lawyer on an hourly basis? And I said, we have an agreement, and that would be not fair. And they said, well, we have sovereign immunity. It had nothing to do with saying this agreement was not valid. And in fact, the resolution of the Yankton Sioux tribe issued on February 22, 2012, resolution number 212-019, I'm sorry, this is the 27th day of February, says that whereas the Yankton Sioux tribe approved the law from Herman and Mermelstein and Horowitz, etc., to pursue land litigation against the United States and the firm pursued these claims on behalf of the tribe since July 2003. This was signed by the Business and Claims Committee chairman, Thurman Knoyer, and by Glenn Soley, the Business and Claims Committee. Can I ask you a question? Because you're running out of time. Why didn't you ask for a waiver of sovereign immunity in the original agreement? Well, because we were never planning on, I didn't think we would ever bring a claim to sue the tribe. Under our understanding with the tribe, the money would be paid from the proceeds. If there were no proceeds, there would be no attorney's fees. That's a pure contingency fee agreement. And so it was expected that the money would be paid, as there always is, from the contingency fee. I want to add one last thing, Your Honor, to the government's point, is that somehow directing the government to pay our fee directly would violate sovereign immunity. In the resolution of 2012, the tribe authorized Herman, Mermelstein, and Horowitz to direct the United States to pay the settlement amount to Herman, Mermelstein, and Horowitz, a trust account, and to disperse pursuant to the settlement agreement. That was the original understanding. And I want to also point out that after the settlement was agreed and approved by the Business and Claims Committee, there was a tribal-wide council vote of the entire tribe, and it was approved, leading to the resolution by the tribe that we were authorized to enter the agreement and to litigate, and that we are entitled to our fees, and that the government was directed... law, now known as Herman law. The council for the tribe suggests that somehow Waters is the same as this case, and it's clearly not, because in Waters, there was a separate claim against the government. It's not what we're seeking here. What the government wants to hold true is that any time... Yeah, money's fungible, so any money that doesn't go to the tribe theoretically would go into the treasury, but that doesn't make every single claim for money involving a tribe void because of sovereign immunity. Okay. Other questions from the Court? Thank you. We'll take a matter under submission.
judges: Garland, Henderson, Williams